IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

SENECA SUSTAINABLE ENERGY, LLC,   )
   )
      Plaintiff,   )   TC-MD 120852C
   )
      v.   )
   )
LANE COUNTY ASSESSOR   )
 and DEPARTMENT OF REVENUE,   )
State of Oregon,   )
   )
      Defendants.   )   **DECISION**

This matter is before the court on Defendant Oregon Department of Revenue's

(Department's) Motion to Dismiss (Motion) Plaintiff's Complaint for lack of subject matter

jurisdiction, citing Tax Court Rule (TCR) 21. (Dept's Mot at 1.) That Motion was filed March

15, 2013. Plaintiff filed a Response April 30, 2013, and the Department filed its Reply May 16,

2013. The court heard oral argument June 4, 2013. Plaintiff is represented by David L. Canary

(Canary) and Cynthia M. Fraser, Attorneys at Law. Department is represented by Marilyn J.

Harbur (Harbur) and Joseph A. Laronge, Assistant Attorneys General. Harbur argued the case

for the Department and Canary for Plaintiff.

## I. STATEMENT OF FACTS

The subject property,[1] a cogeneration facility, is exempt from ad valorem property taxes

under the enterprise zone tax exemption program provided under ORS 285C.175. (Ptf's Compl

at 1.) Plaintiff's application for state enterprise zone tax exemption was filed and approved in

2009, and provided exemption for three years as long as Plaintiff complied with applicable

/ / /

---

[1] Identified as Accounts 5645217, 0348829 and 1851292. (Ptf's Compl at 1.)

requirements. (Ptf's Compl at 1, Ex 1 at 1; Dept's Mot at 3.) On its application, Plaintiff estimated the total cost of its facility to be $49,855,675. (Dept's Mot at 3, Ex A at 2.)

In this case, the Department determined the tax year 2012-13 real market value (RMV) to be $62,065,350. (Ptf's Compl at 2, Ex 2.) Pursuant to applicable statute, the assessor determined that $60,954,478 was exempt from ad valorem property taxation for the 2012-13 tax year under the enterprise zone exemption provisions. (Ptf's Resp at 3, Decl of Rea at 2.) The corresponding property tax exemption is $648,588. (Ptf's Resp at 3.)

However, pursuant to ORS 285C.150, Plaintiff was required to accept "Additional Conditions Imposed by the Zone Sponsor * * *." (Ptf's Resp Ex 1 at 1.) One of the conditions – the one ultimately prompting this appeal – is the payment by Plaintiff of a public benefit contribution. (*Id.*) The public benefit contribution in this case, as it currently stands, has the effect of limiting the amount of the property tax exemption Plaintiff would have received. (*See id.*)

Calculation of the public benefit contribution is somewhat complicated, but begins with a determination of the potential tax exemption, which is simply the RMV of the exempt property multiplied by the applicable tax rate. (Ptf's Resp, Decl of Rea at 3.) The property tax exemption in this case for the 2012-13 tax year would be $648,588, but for the PBC imposed by the zone sponsors.[2] (*Id.*) However, the zone sponsor's imposed on Plaintiff a limitation on the tax

---

[2] The sponsors of the West Eugene Enterprise Zone established additional conditions they impose on eligible business firms seeking an enterprise exemption. (Dept's Mot, Ex A at 7.) The pertinent language reads as follows:

"ORS 285C.150 allows sponsors of urban enterprise zones to impose additional conditions on eligible business firms seeking authorization under ORS 285C.140. The City of Eugene and Lane County, sponsors of the West Eugene Enterprises Zone, have adopted the following additional conditions:

"Section 1. Qualifying companies shall be required to make a public benefit contribution * * *. The contribution shall be a percentage of the total tax exemption in any given year.

exemption based on a formula tied to the number of jobs Plaintiff created. (Dept's Mot, Ex A at 7.) The excess amount, or a portion thereof, must be paid by the qualifying business, as a public benefit contribution. (*Id.*) In this case, Plaintiff's maximum property tax exemption is $320,000. (Ptf's Resp, Decl of Rea at 3.) The public benefit contribution would generally be the excess between that amount ($320,000) and the $648,588 potential tax exemption Plaintiff would have received but for the imposition of the public benefit contribution, which would be $328,588. (*Id.*) However, the enterprise zone agreement has a maximum public benefit payment limitation, which is one-third of the tax exemption benefit ($648,588). (*Id.*) Because of that maximum public benefit payment limitation, Plaintiff's public benefit contribution is $216,196. (*Id.*) The funds from the public benefit contribution are allocated to County and City government, and the local public education system. (Ptf's Resp, Ex 1 at 1.)

A reduction in the RMV determined by the Department would reduce the amount of Plaintiff's property tax exemption, which in turn would reduce Plaintiff's public benefit contribution because of the formula described above. Plaintiff acknowledges that its public benefit contribution would be reduced to zero if the RMV were reduced to $30 million. (Ptf's Resp, Decl of Rea at 3.)

By its Complaint, Plaintiff seeks a reduction in the RMV of the portion of the subject property determined to be exempt from taxation from $60,954,478 to $30,000,000, and a recalculation of the public benefit contribution based on "the court's determination of the correct

---

"Section 2. Notwithstanding the provisions in Section 1, the three-year tax exemption benefits shall be limited to a maximum of $96,000 per job created or $32,000 per job created per year, whichever is less. Tax exemption benefits in excess of that amount shall be paid as a public benefit contribution. * * * The maximum public benefit payment shall be one-third of the tax exemption benefit.

"Section 3. The funds received as a result of the public benefit contribution shall be distributed to the City, County and local educational institutions. * * *."

(*Id.*)

real market value and tax exempt value, with a refund to Plaintiff of any excess public benefit contribution payment Plaintiff has made. (Ptf's Compl at 2-3.)

The Department moved to dismiss on two grounds: 1) Plaintiff is not aggrieved as required by ORS 305.275(1)(a) because it is exempt from any property tax for the year at issue, and Plaintiff therefore lacks standing; 2) the court lacks jurisdiction under ORS 305.410, because the public benefit contribution is not a tax, but rather "a contractual obligation, which [P]laintiff voluntarily agreed to as a condition of obtaining its property tax exemption." (Dept's Mot at 2, 4.)

## II. ANALYSIS

ORS 305.275(1)[3] authorizes an appeal to the Magistrate Division of the Oregon Tax Court by any person "(a) * * * aggrieved by and affected by an act, omission, order or determination of * * * (A) [t]he Department of Revenue in its administration of the revenue and tax laws of this state * * * [or] (C) [a] county assessor or other county official, including but not limited to the denial of a claim for exemption[.]"

The Department argues that, under ORS 305.275(1)(a), a taxpayer does not have standing unless the taxpayer is aggrieved. (Dept's Mot at 2.) The Department states that "Plaintiff has filed a complaint alleging that its property value is too high and should be reduced." (*Id*. at 1.) The Department next argues that "[a] request for a valuation reduction must result in a property *tax* reduction for the requisite aggrievement." (*Id*. at 2 (emphasis added).) The Department then asserts that Plaintiff in this case is not aggrieved because "the [subject] property is completely under enterprise zone exemption, so no tax is due." (Dept's Mot at 1.) Lacking any responsibility to pay tax, the Department insists Plaintiff is not aggrieved. (*Id*.)

---

[3] All references to the Oregon Revised Statutes (ORS) are to 2011.

Plaintiff acknowledges that "there are a number of cases that hold that taxpayers do not have standing in this court if a reduction in the real market value does not affect the amount of tax a taxpayer will pay." (Ptf's Resp to Dept's Mot to Dismiss at 10.) However, Plaintiff argues that the "Department misstates the criteria for a taxpayer to have standing in this court." (*Id*.) Plaintiff relies on an excerpt from a law review article written by Judge Breithaupt and Presiding Magistrate Tanner, which states:

"1. Standing

"Not everyone who questions the accuracy or validity of a tax has a right to file suit in the Tax Court. Rather, only those taxpayers who are personally **financially aggrieved** by a tax assessment have 'standing' to sue."

Breithaupt and Tanner, *The Oregon Tax Court at Mid-Century*, 48 Willamette L. Rev. 147, 155 (2011) (emphasis added).

The court agrees with the statement on standing quoted by Plaintiff and set forth immediately above, but finds Plaintiff has focused its emphasis on the wrong language in that sentence. The operative words are "tax assessment," not "financially aggrieved." A person has standing in the Oregon Tax Court if they are financially aggrieved by a *tax assessment*. Plaintiff in this case is not financially aggrieved by a tax assessment because its property is exempt from taxation, and the requested reduction in RMV will not affect its tax liability. Accordingly, Plaintiffs is not aggrieved and lacks standing.

The court agrees that if Plaintiff is correct in its assertion that the Department has overvalued its property, Plaintiff is "financially aggrieved because the [alleged] error in valuation by the Department * * * [would] overstate[] the amount of the tax exemption and the amount of the public benefit contribution that [Plaintiff] is obligated to pay to its zone sponsor."

(Ptf's Resp at 11.) However, that adverse financial consequence stemming from the alleged error in RMV does not render Plaintiff aggrieved in the sense required by ORS 305.275(1).

"In requiring that taxpayers be 'aggrieved' under ORS 305.275, the legislature intended that the taxpayer have an immediate claim of wrong. It did not intend that taxpayers could require the expenditure of public resources to litigate issues that might not ever arise." *Kaady v. Dept. of Rev.*, 15 OTR 124, 125 (2000). For there to be an immediate claim of wrong, the requested reduction in value must produce a corresponding reduction in property taxes. Where a reduction in real market value will not reduce taxes, this court has ruled that taxpayers are not aggrieved. *Sherman v. Dept. of Rev.*, 17 OTR 322 (2004). Plaintiff has not alleged that the requested reduction in RMV, if granted, would reduce its property taxes. The reason is obvious; Plaintiff's property as is exempt from property taxes for the 2012-13 tax.

Plaintiff has to pay a substantial amount of money to the zone sponsor's because of its agreement with the sponsors to pay a public benefit contribution on a portion of the excess tax benefit it has not received due to the limit imposed by the zone sponsor's on the maximum tax benefit (exemption). However, as the court has already stated above, the requested reduction in RMV will not reduce Plaintiff's property tax liability and Plaintiff is not aggrieved. As such, Plaintiff lacks standing to bring the appeal.

Having decided that Plaintiff is not aggrieved and therefore lack standing, the court need not address the other jurisdictional issue tied to ORS 305.410(1).

### III.  CONCLUSION

The court concludes that Plaintiff is not aggrieved as required by ORS 305.275(1) and therefore lack standing. Accordingly, the Department's Motion To Dismiss is granted. Now, therefore,

DECISION  TC-MD 120852C                                                                 6

IT IS THE DECISION OF THIS COURT that Defendant Department of Revenue's Motion to Dismiss is granted because Plaintiff lacks standing.

Dated this ___ day of July 2013.

_____
DAN ROBINSON
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Dan Robinson on July 30, 2013. The Court filed and entered this document on July 30, 2013.*